# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEVON MICHAEL BOYD, <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | Case No. 1:17-cv-00021-SAB <br><br> ORDER GRANTING PLAINTIFF'S SOCIAL SECURITY APPEAL AND REMANDING FOR FURTHER ADMINISTRATIVE PROCEEDINGS <br><br> (ECF Nos. 16, 17) |

## I.

## INTRODUCTION

Plaintiff Devon Michael Boyd ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for disability benefits pursuant to the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Stanley A. Boone.[1]

Plaintiff suffers from a psychotic disorder and polysubstance dependence in reported remission. For the reasons set forth below, Plaintiff's Social Security appeal shall be granted.

///

---

[1] The parties have consented to the jurisdiction of the United States Magistrate Judge. (See ECF Nos. 7, 8.)

1

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff protectively filed a Title XVI application for supplemental security income on September 17, 2012. (AR 54, 124-130.) Plaintiff's application was initially denied on April 10, 2013, and denied upon reconsideration on January 10, 2014. (AR 64-67, 75-78.) Plaintiff requested and received a hearing before Administrative Law Judge Sharon L. Madsen ("the ALJ"). Plaintiff appeared for a hearing on September 22, 2015. (AR 25-46.) On October 13, 2015, the ALJ found that Plaintiff was not disabled. (AR 8-20.) The Appeals Council denied Plaintiff's request for review on November 7, 2016. (AR 1-3.)

### A. Relevant Hearing Testimony

Plaintiff appeared with counsel and testified at the September 22, 2015 hearing. (AR 28-41.) Plaintiff was born on October 27, 1970. (AR 28.) Plaintiff is separated and has children who live with their mother. (AR 29.) Plaintiff lives in an apartment with his mother, sister, a niece, and a nephew. (AR 29.) Plaintiff has a driver's license but does not drive very often. (AR 29.)

Plaintiff completed the tenth grade and received his GED. (AR 29.) Plaintiff has spent some time in custody. (AR 30.) Since he filed his application on September 2012, Plaintiff has been in custody for maybe a month and a half. (AR 30.) Plaintiff worked at various temporary jobs but only for short periods of time. (AR 32.)

Plaintiff needs reminders on dressing. (AR 30.) He does not think about showering because he has too much other stuff going on in his head. (AR 40-41.) He does not do any household chores, but he does do things like washing dishes and making his bed. (AR 30-31.) Plaintiff does not cook, shop, or engage in social activities outside of the family with which he lives. (AR 31.) In the morning, Plaintiff will get up, have breakfast and coffee and read the newspaper. (AR 31.) He does not watch television, listen to the radio, or leave the house. (AR 31.) Plaintiff will visit with his mother and then go outside and sit on the balcony. (AR 31.) Plaintiff will nap during the day. (AR 32.)

Plaintiff is afraid to leave the house. (AR 32.) Plaintiff was uncomfortable because there

were too many people in the room during the hearing. (AR 32.) Plaintiff is only comfortable with his family. (AR 35.) Plaintiff will talk to his friends on the phone once or twice a week. (AR 33.) Plaintiff hears voices twenty-four hours a day and it really does "a number on him." (AR 33.) The voices ask him why he is going to eat today, why he took a shower, or tell him to not even think about leaving the house. (AR 34.) Plaintiff tries to ignore the voices. (AR 34.) The medication Plaintiff is on now makes the voices quieter. (AR 34.) Plaintiff goes to counseling. (AR 35.) They talk about various things and it keeps him calm. (AR 35.) Plaintiff has mood swings but they are getting better because his medication helps with that. (AR 41.) When his mood swings are really bad, Plaintiff will punch things like brick walls. (AR 41.) Plaintiff used to cut himself but he stopped doing that. (AR 41.)

Plaintiff has difficulty concentrating. (AR 35.) He can only focus for five minutes when he reads the paper. (AR 35.) Plaintiff would need help managing his funds if he received them. (AR 36.) Plaintiff thinks that at some time he will end up in the hospital from his mental illness. (AR 36.) Plaintiff's appetite also suffers and it is a struggle for him to eat. (AR 36-37.) Sometimes he will eat and sometimes he will not. (AR 37.) Plaintiff weighs about 200 pounds. (AR 37.) His weight varies. (AR 37.) A couple of months ago he was down to 149 pounds. (AR 37.) Plaintiff has constant fatigue. (AR 37.)

Plaintiff was in rehab but completed it. (AR 34.) Plaintiff has been clean and sober for years. (AR 35.) Plaintiff went through counselling for a whole year. (AR 38.) He had difficulty maintaining his concentration during the two hour classes. (AR 38.) He could not be still. (AR 38.) They would ask him one or two questions and then he would be waiting to go. (AR 38.) He left early once or twice because of his symptoms. (AR 38.)

Plaintiff sees Dr. Collado for 30 to 40 minute sessions. (AR 39.) On a bad day, Plaintiff does not want to be around anybody and just wants to sit and be left alone. (AR 39.) He will not even want to be around family. (AR 39.) Plaintiff will have five or six bad days a month. (AR 39-40.) During these times he will just shut down. (AR 40.)

Thomas C. Dachelet, a vocational expert ("VE") also testified at the hearing. (AR 42-44.)

**B.     ALJ Findings**

The ALJ made the following findings of fact and conclusions of law.

- Plaintiff has not engaged in substantial gainful activity since September 17, 2012, the application date.
- Plaintiff has the following severe impairments: a psychotic disorder and polysubstance dependence in reported remission.
- Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.
- Plaintiff has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: Plaintiff can perform simple routine tasks with occasional interaction with the public and occasional interaction with coworkers, supervisors i.e. in the same building but not side-by-side.
- Plaintiff has no past relevant work.
- Plaintiff was born on October 27, 1970, and was 41 years old which is defined as a younger individual age 15-49 on the date the application was filed.
- Plaintiff has at least a high school education and is able to communicate in English.
- Transferability of job skills is not an issue because Plaintiff does not have past relevant work.
- Considering Plaintiff's age, education, work experience, and residual functional capacity there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.
- Plaintiff has not been under a disability as defined in the Social Security Act since September 17, 2012, the date the application was filed.

(AR 13-20.)

## III.

## LEGAL STANDARD

To qualify for disability insurance benefits under the Social Security Act, the claimant must show that he is unable "to engage in any substantial gainful activity by reason of any

medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Regulations set out a five step sequential evaluation process to be used in determining if a claimant is disabled. 20 C.F.R. § 404.1520; <u>Batson v. Commissioner of Social Security Administration</u>, 359 F.3d 1190, 1194 (9th Cir. 2004). The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

> Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.
>
> Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work? If so, proceed to step three. If not, the claimant is not disabled.
>
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.
>
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

<u>Stout v. Commissioner, Social Sec. Admin.</u>, 454 F.3d 1050, 1052 (9th Cir. 2006).

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits. 42 U.S.C. § 405(g). In reviewing findings of fact in respect to the denial of benefits, this court "reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error." <u>Hill v. Astrue</u>, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means more than a scintilla, but less than a preponderance. <u>Smolen v. Chater</u>, 80 F.3d 1273, 1279 (9th Cir. 1996) (internal quotations and citations omitted). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." <u>Thomas v. Barnhart</u>, 278 F.3d 947, 955 (9th Cir. 2002) (quoting <u>Flaten v. Sec'y of</u>

Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)).

"[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." Hill, 698 F.3d at 1159 (quoting Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006). However, it is not this Court's function to second guess the ALJ's conclusions and substitute the court's judgment for the ALJ's.

## IV.

## DISCUSSION AND ANALYSIS

Plaintiff argues that the ALJ erred in giving little weight to the opinion of his treating physician, Dr. Collado. Defendant responds that the ALJ properly gave little weight to the questionnaire completed by Dr. Collado because she found that it was overly restrictive and not supported by the medical evidence in the record as a whole and specifically pointed to Plaintiff's Global Assessment of Function ("GAF")[2] and the finding that Plaintiff had below average intelligence.

The weight to be given to medical opinions depends upon whether the opinion is proffered by a treating, examining, or non-examining professional. See Lester v. Chater, 81 F.3d 821, 830-831 (9th Cir. 1995). In general a treating physician's opinion is entitled to greater weight than that of a nontreating physician because "he is employed to cure and has a greater opportunity to know and observe the patient as an individual." Andrews v. Shalala, 53 F.3d 1035, 1040-41 (9th Cir. 1995) (citations omitted). Where a treating physician's opinion is not contradicted by another physician, the ALJ can only reject the opinion by providing clear and convincing reasons. Lester, 81 F.3d at 830. If a treating physician's opinion is contradicted by another doctor, it may be rejected only for "specific and legitimate reasons" supported by substantial evidence in the record. Ryan v. Commissioner of Social Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) (quoting Bayless v. Barnhart, 427 F.3d 1121, 1216 (9th Cir. 2005)).

---

[2] "The GAF score is a 'multiaxial' assessment that reflects a clinician's subjective judgment of a patient's overall level of functioning." Green v. Astrue, No.5:10-cv-01294-AJW, 2011 WL 2785741, at *2 n.2 (C.D. Cal. July 15, 2011) (quoting American Psychiatric Association, Diagnostic & Statistical Manual of Mental Disorders Multiaxial Assessment 30, 34 (4th ed. Text rev. 2000) (DSM-IV)).

On August 27, 2015, Dr. Collado completed a mental disorder questionnaire for evaluation of ability to work. (AR 254-255.) Dr. Collado opined that Plaintiff requires assistance to keep appointment; his posture, gait, mannerisms, or general appearance impair his ability to work; and there is something in his history of family, education, marriage, divorce, employment, sickness, or arrests that would affect his ability to work. (AR 254.) Dr. Collado found that Plaintiff had no significant impairment in orientation, but was significantly impaired in memory, concentration, intelligence, and judgment. (AR 254.) Plaintiff's mood or affect are affected to a degree that would affect his ability to work and Plaintiff has been diagnosed with a mental disorder. (AR 254.) Plaintiff has impairments in the following areas that would impair his ability to work: hallucinations, paranoid thoughts, mood swings, and social isolation. (AR 254.) Plaintiff activities of daily living have become impaired to the point that he needs assistance from others to achieve a socially acceptable standard of self-care. (AR 255.) Plaintiff's social functioning has become deficient to the point that it would impair his ability to work with supervisors, coworkers, or the public. (AR 255.) Plaintiff's mental illness impairs his ability to adapt to stresses common to the normal work environment. (AR 255.) Plaintiff's medication cause adverse side effects to the degree that they would impair Plaintiff's ability to perform normal work. (AR 255.) Plaintiff's condition is not likely to improve in the next 12 months or less. (AR 255.)

In this instance, the agency physicians were not able to assess Plaintiff's residual mental capacity due to his lack of cooperation in returning forms and he was found to be not disabled because he did not present evidence to support disability. (AR 53, 59.) The Court finds that the opinion of Dr. Collado is uncontradicted and therefore, the ALJ needed to provide clear and convincing reasons to reject the medical source statement.

1. <u>The ALJ Failed to Provide Clear and Convincing Reasons to Reject Dr. Collado's Opinion</u>

The ALJ noted that Plaintiff had received scattered mental health treatment which began one month prior to his filing his application for disability benefits. (AR 15, 18.) The ALJ then considered Plaintiff's mental health treatment from his first examination in August 2012 through

the date that Dr. Collado completed the report at issue here. (AR 15-17.) The ALJ gave little weight to the medical source statement completed by Dr. Collado on August 27, 2015, because it is overly restrictive and not supported by the medical evidence of record as a whole. (AR 17.) Specifically, the ALJ noted that Plaintiff's mental health treatment records consistently show that he had moderate GAF scores and that Dr. Conner found Plaintiff to have average intelligence on many occasions contrary to Dr. Collado's findings. (AR 17.)

According to the record, Plaintiff began receiving mental health treatment on August 24, 2012. (AR 199-201.) After starting treatment, Plaintiff stated that the medication helped his sleep and appetite, but did not stop the voices. (AR 15, 194.) In 2012, Plaintiff's mental status examinations were within normal limits except for paranoia. (AR 15, 193, 196, 201.) Plaintiff did report that he was calmer on his medication and the record notes improvement with his medication although he continued to have auditory hallucinations. (AR 193, 215, 219, 233, 235, 240.)

Plaintiff continued to have auditory hallucinations, depression, anxiety, and paranoia, but he was alert and oriented with normal speech, organized thought process, and normal judgment and insight. (AR 16, 217, 215, 221, 233, 235, 240, 242, 245, 249, 251.) Although Plaintiff continued to complain of similar symptoms, his mental status examinations remain essentially unchanged and he was consistently assessed with a GAF indicating moderate symptoms. (AR 16-17, 216, 217, 220, 234, 236, 238, 240, 243, 246, 248, 250, 252.) Plaintiff indicated in September 2014 that he had increasing symptoms and reported having a temper around other people, but the record noted that he was nice and polite. (AR 17, 240, 242.) Plaintiff admitted that his medication quieted the voices, helped his mood swings, and he feels calmer with mental health treatment. (AR 18, 35, 41, 233.)

While the Court finds that there is substantial support in the record that mental health examinations were generally unchanged, examination consistently reflects that Plaintiff was found to have delusions, hallucinations and paranoia (AR 193, 196, 221), and Dr. Collado also consistently made findings of ideas of reference, phobias, depression, and anxiety and found Plaintiff to have impaired memory (AR 216, 217, 219, 233, 235, 237, 240, 242, 245, 247, 249,

251). So, while there are normal findings reflected in the medical record, there are also significant findings that Plaintiff continued to have symptoms. Given the objective evidence contained in the medical record the ALJ's finding that Dr. Collado's opinion is not supported by the medical evidence of record as a whole is not a clear and convincing reason to reject the opinion.

Plaintiff contends that there are no outstanding issues to be resolved, and the Court should credit Dr. Collado's opinion as true and remand for the payment of benefits. Defendant counters that Dr. Collado's medical source statement does not provide a basis to award benefits. Dr. Collado did not state the degree of impairment or explain the opinions contained in the statement. Defendant argues that the proper remedy is remand for further proceedings.

The ordinary remand rule provides that when "the record before the agency does not support the agency action, . . . the agency has not considered all relevant factors, or . . . the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1099 (9th Cir. 2014). This applies equally in Social Security cases. Treichler, 775 F.3d at 1099. Under the Social Security Act "courts are empowered to affirm, modify, or reverse a decision by the Commissioner '*with or without* remanding the cause for a rehearing.'" Garrison v. Colvin, 759 F.3d 995, 1019 (9th Cir. 2014) (emphasis in original) (quoting 42 U.S.C. § 405(g)). The decision to remand for benefits is discretionary. Treichler, 775 F.3d at 1100. In Social Security cases, courts generally remand with instructions to calculate and award benefits when it is clear from the record that the claimant is entitled to benefits. Garrison, 759 F.3d at 1019.

The Ninth Circuit has "devised a three-part credit-as-true standard, each part of which must be satisfied in order for a court to remand to an ALJ with instructions to calculate and award benefits: (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly

discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." Garrison, 759 F.3d at 1020. The credit as true doctrine allows "flexibility" which "is properly understood as requiring courts to remand for further proceedings when, even though all conditions of the credit-as-true rule are satisfied, an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled. Id. at 1021. Even when the circumstances are present to remand for benefits, "[t]he decision whether to remand a case for additional evidence or simply to award benefits is in our discretion." Treichler. 775 F.3d at 1102 (quoting Swenson v. Sullivan, 876 F.2d 683, 689 (9th Cir. 1989)).

Here, the first part of the credit as true test has not been satisfied. The agency physician's determined that Plaintiff had medically determinable impairments, but opined that due to Plaintiff's lack of cooperation his functional ability was unable to be determined and a consultative examination was required. (AR 51-55, 58-62.) The only opinion in the record is the medical source statement of Dr. Collado, which the Court finds does not appear to be an accurate statement of Plaintiff's functional ability based on the treatment notes.

Review of the record demonstrates that Dr. Collado's opinions in the medical source statement are inconsistent with his treatment records. For example, Dr. Collado opined that Plaintiff's judgment was significantly impaired. However, while Plaintiff's insight and judgment were initially found to be fair (AR 201), after he was started on medication the record demonstrates consistent findings of normal judgment and insight with some impaired insight about the validity of the voices. (AR 193, 196, 215, 217, 219, 221, 235, 237, 240, 242, 245, 247, 249, 251.) Specifically, on the same date that Dr. Collado completed the medical source statement stating that Plaintiff had significant impaired judgment, she made this same finding that his judgment and insight were normal. (AR 233.)

Further, as the ALJ noted, review of the medical record demonstrates that Dr. Collado consistently found Plaintiff to have a GAF of 56. (AR 216, 217, 220, 234, 236, 238, 240, 243, 246, 248, 250, 252.) "A GAF score in the range of 51–60 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or coworkers)." Cornelison v. Astrue, 2011 WL 6001698, at *4 n.6 (C.D. Cal. Nov. 30,

2011) (citing American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders ("DSM–IV"), at 34). "The Commissioner has determined the GAF scale 'does not have a direct correlation to the severity requirements in [the Social Security Administration's] mental disorders listings.' " McFarland v. Astrue, 288 F.App'x 357, 359 (9th Cir. 2008) (unpublished).[3] (quoting 65 Fed.Reg. 50,746, 50,765 (Aug. 21, 2000)). However, GAF scores are relevant and may be considered by the ALJ in considering the claimant's general functional abilities. Graham v. Astrue, 385 F.App'x 704, 706 (9th Cir. 2010). The moderate GAF score findings are inconsistent with the significant impairment in all areas as opined in the medical source statement.

Also, as the ALJ noted, Dr. Collado opined that Plaintiff had below average intelligence which impaired his ability to work. But on initial examination by LMFT Prosser and subsequent visits with Dr. Conner, Plaintiff was found to have average intelligence. (AR 192, 196, 201, 221.)

When applying for disability benefits, the claimant has the duty to prove that he is disabled. 42 U.S.C. § 423(c)(5)(A). The ALJ has an independent "duty to fully and fairly develop the record and to assure that the claimant's interests are considered." Widmark v. Barnhart, 454 F.3d 1063, 1068 (9th Cir. 2006) (quoting Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983)). The ALJ has a duty to further develop the record where the evidence is ambiguous or the ALJ finds that the record is inadequate to allow for proper evaluation of the evidence. Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001); Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001).

Here, the medical record was inadequate to determine Plaintiff's functional limitations and the ALJ should have sought additional evidence to evaluate Plaintiff's functional capacity with his limitations. In this instance, further administrative proceedings would be useful to receive additional evidence of what Plaintiff is able to do despite his disabilities. Accordingly,

---

[3] Unpublished dispositions and orders of this Court issued on or after January 1, 2007 may be cited to the courts of this circuit in accordance with FRAP 32.1. Ninth Circuit Rule 36-3(b); see Animal Legal Def. Fund v. Veneman, 490 F.3d 725, 733 (9th Cir. 2007) ("as of January 1, 2007, we must now allow parties to cite even unpublished dispositions and unpublished orders as persuasive authority").

11

this action shall be remanded for further proceedings to obtain medical evidence addressing Plaintiff's residual functional capacity with his psychological limitations.

## V.
## CONCLUSION AND ORDER

Based on the foregoing, the Court finds that the ALJ did not provide clear and convincing reasons to reject the opinion of Plaintiff's treating physician. Accordingly, IT IS HEREBY ORDERED that Plaintiff's appeal from the decision of the Commissioner of Social Security is GRANTED and this action shall be remanded for further proceedings consistent with this order. It is FURTHER ORDERED that judgment be entered in favor of Plaintiff Devon Michael Boyd and against Defendant Commissioner of Social Security. The Clerk of the Court is directed to CLOSE this action.

IT IS SO ORDERED.

Dated: __**November 8, 2017**__

_____
UNITED STATES MAGISTRATE JUDGE